IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA

v.

CASE NO.: CR207-03

TIBURCIO GARCIA

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Tiburcio Garcia ("Defendant") filed a Motion to Suppress, seeking to exclude from the trial of this case any evidence obtained through the search of his vehicle. (Doc. No. 21). Defendant also filed a Motion to Suppress Statements, wherein he seeks the suppression of any and all statements made by him to law enforcement officers after his arrest. (Doc. No. 22). The undersigned conducted a hearing on these matters on May 8, 2007, at which John Threat ("Threat"), a Trooper First Class with the Georgia State Patrol ("GSP"), and Ronald Griffin ("Griffin"), a Special Agent with the Drug Enforcement Agency ("DEA"), testified. The undersigned viewed a video of the traffic stop and roadside search. Based on the following, Defendant's motions should be **DENIED**.

## FINDINGS OF FACT

The credible evidence before the Court establishes the following:

Defendant was traveling north on Interstate 95 on December 14, 2006 in a gold Dodge truck. While on traffic duty on I-95 in McIntosh County, Trooper John Threat

observed Defendant's truck and suspected its windows were tinted darker than allowable by state law. Threat began to follow Defendant and observed him failing to maintain his lane. Threat initiated a stop of Defendant's vehicle by activating his blue lights. After he was stopped, Threat asked Defendant to exit the truck and accompany him to the rear of the vehicle for safety purposes. Defendant provided his license and registration to the officer. Threat informed Defendant that he was going to issue a warning for the two traffic violations. Trooper Threat perceived that Defendant was "very nervous about what was going on with the stop" and observed him shaking and that he "never calmed down." Defendant informed Threat that he was traveling to Wilson, South Carolina to visit a friend. After noticing a bulge, Threat had Defendant empty his pockets, which contained his wallet and cash. Threat inquired as to whether there were any weapons or drugs in the vehicle and Defendant responded that there were not.

At this point, Defendant offered to let Threat search his vehicle, telling the officer that he could look in the truck. Threat verbally confirmed that Defendant meant to offer his consent to a search, called for backup, and had Defendant read and sign a consent to search form. When backup arrived on the scene, the officers began to search the vehicle. They found marijuana debris in the cab of the truck, and tools and a tube of silicone sealant in the back of the truck. Because of the presence of these items and because of their intelligence that contraband was often stored inside the engine's intake manifold on Dodge vehicles, the officers lifted the hood of the car to inspect that area. Threat observed that the bolts of the intake manifold had been loosened, that there were "fingerprints everywhere" on the manifold, and that it had been cut and resealed.

The officers lifted the cover of the intake manifold and discovered packages they found consistent with those used for storing drugs. At that point, Defendant was detained, and he and his vehicle accompanied the officers to an automotive garage.

When the intake manifold of Defendant's truck was taken apart, twenty-two bricks of cocaine were found inside. Sergeant Phillips of the Georgia State Patrol read Defendant his Miranda rights, and he was subsequently questioned by Special Agent Griffin of the DEA upon his arrival on the scene. After confirming that he had been informed of his Miranda rights, Defendant agreed to speak with Griffin about the cocaine. Griffin testified that in speaking with Defendant, he attempted to determine the source of the cocaine and to suggest a controlled delivery of the drugs. However, Defendant only answered that "they will kill me" and indicated that he had, in Griffin's words, "never done this before." Griffin ceased the questioning after he determined that Defendant was not going to provide additional helpful information.

## DISCUSSION AND CITATION TO AUTHORITY

Defendant asserts that the traffic stop was unconstitutional, and that the search of the vehicle was unconstitutional as well. Defendant also contends that the consent given to search the vehicle was not freely, intelligently, and voluntarily made. Further, Defendant asserts that the search conducted by the officers exceeded the scope of the consent given. Finally, Defendant alleges that statements he made were involuntary and were obtained in violation of his right to counsel.

The Government contends that the traffic stop initiated by Officer Threat was lawful because Threat observed Defendant violating the traffic laws of the State of Georgia. The Government asserts that valid consent to search was obtained from

Defendant, and that the extent of the search was within the scope of the consent given. Finally, the Government contends that Defendant's statements were made either before he was in custody or after he validly waived his Miranda rights.

## I. Initiation of the Traffic Stop

"Law enforcement [officers] may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998). An individual officer's subjective intentions are irrelevant to the Fourth Amendment validity of a traffic stop that is justified objectively by probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810-13, 116 S. Ct. 1769, 1772-74, 135 L. Ed. 2d 89 (1996). In other words, if the driver of a car has broken a traffic law, no matter how relatively minor, a motion to suppress evidence cannot be based on the argument that the stop was pretextual.

Threat testified that he stopped Defendant because his window tint appeared darker than allowed under state law, and for failure to maintain his lane after noticing Defendant's vehicle travel over the fog line. Accordingly, Threat had sufficient probable cause to stop Defendant, as he appeared to have disobeyed two (2) traffic laws of the State of Georgia. See O.C.G.A. §§ 40-8-73.1 (window tint statute) and 40-6-48 (failure to maintain lane). Accordingly, because of the observation of two potential traffic violations, the initiation of the traffic stop was permissible.

## II. Scope of Traffic Stop

"The right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV. A seizure occurs "'whenever a police officer accosts an individual and restrains his freedom to walk away.'" United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578, 45 L. Ed. 2d 607 (1975)). At least "three separate categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply" have been identified by the Supreme Court: "(1) brief, consensual and non-coercive interactions" which do not implicate a Fourth Amendment analysis; "(2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied . . .; and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny." Id. (internal citations omitted). The initial stop *sub judice* involves the second type of encounter, and thus, requires analysis under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Terry requires that "an officer's investigation of a traffic stop . . . be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting Terry, 392 U.S. at 20, 88 S. Ct. at 1879)). Additionally, "the traffic stop must be of a limited duration. The stop 'may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity.'" Id. (quoting United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)).

Reasonable suspicion requires that the officer "'be able to point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion.'" Boyce, 351 F.3d at 1107 (quoting United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990). The totality of the circumstances determines what reasonable suspicion is "such that, while some individual factors may be consistent with innocent travel[,] they can also, when taken together, give rise to a reasonable suspicion." Id. (internal citation and punctuation omitted). However, "reasonable suspicion must be more than an inchoate hunch, and the Fourth Amendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop." Id.

Defendant contends that the scope of Trooper Threat's investigation during the traffic stop was unconstitutional because Threat did not have articulable suspicion of other illegal activity. However, Trooper Threat testified that Defendant acted "very nervous" at the scene, "was looking for an answer" to his questions, was shaking while speaking to him, and "never calmed down . . . even after I told him I was giving him a warning." (Tr. at 7, 28). This created a reasonable and articulable suspicion of other illegal activity such that Threat was permitted to extend the duration and scope of the investigative stop. Furthermore, the detention was not of an excessively long duration. Prior to the consent to search, the traffic stop lasted a total of approximately five minutes, and the questions were posed to Defendant while Threat was still completing the traffic warnings. The duration of the traffic stop from its inception until the time Threat obtained Defendant's consent was certainly reasonable in light of Eleventh Circuit precedent. See, e.g., United States v. Hernandez, 418 F.3d 1206, 1211-12 (11th

AO 72A
(Rev. 8/82)

6

Cir. 2005) (noting a detention of seventeen minutes was justified based on the circumstances presented to the officer at the time of the traffic stop). Accordingly, there is no Fourth Amendment problem with the scope or duration of the traffic stop.

## III. Consent to Search

"A warrantless search is *per se* unreasonable under the Fourth Amendment unless it falls within one of several specifically established and well-delineated exceptions." Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003) (citing Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290 (1978)). An exception to the general rule against a warrantless search is a search made pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973). Consent must be freely given, and the totality of the circumstances determines whether the consent was knowingly and voluntarily given. United States v. Ramirez-Chilel, 289 F.3d 744, 752-53 (11th Cir. 2002). "In assessing [the] voluntariness" of a person's consent, "the inquiry is factual and depends on the totality of the circumstances." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001).

There is no evidence that Threat coerced Defendant to consent to a search of his vehicle. Threat testified, and the video of the stop confirms, that Defendant offered to let Threat look in his truck without any provocation. After this initial offer, Threat verbally confirmed that Defendant meant to give his consent for him to search the vehicle, and subsequently confirmed his consent in writing. Additionally, there is no evidence that Defendant did not understand this conversation with Threat because of any language barrier that would render his consent involuntary. Throughout the duration of the traffic

stop, Defendant gave no indication that he did not understand the officers, and responded quickly and appropriately to all questions presented in English. There is simply no evidence before the Court that Defendant's consent to search the vehicle was not freely given, or that Threat coerced Defendant in an effort to obtain the consent. Accordingly, the search of Defendant's vehicle, conducted pursuant to his valid consent, complies with the protections of the Fourth Amendment.

## IV. Scope of the Search

Defendant contends that his permission for Threat to search his vehicle did not extend to the officers looking inside the air intake manifold. "When an individual gives a general statement of consent [to search] without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991). In this case, Threat and the other officers reasonably interpreted Defendant's consent to include a search of all areas in which contraband might be discovered. Defendant did not offer any limitation on his consent for the officers to search the truck, and because he was physically present at the scene, he had the opportunity to limit the extent of the search or to terminate the search at any time. Furthermore, Defendant offered his consent in response to Trooper Threat's inquiries about the presence of weapons or drugs. Thus, as was the case in Harris, Defendant knew that the officers were searching for such contraband, and therefore his consent would reasonably be interpreted as consent to search places where such contraband could be hidden. Id. at

1118. Accordingly, the scope of the officers' search of Defendant's vehicle did not run afoul of the Fourth Amendment.

## V. The Statements

Defendant contends that the statements he made while in police custody were not freely and voluntarily given. Defendant further contends that he was not properly advised of his Miranda rights prior to making these statements.

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The procedural safeguards required are that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id.

"[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. . . . [T]he term interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating

response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980).

"As with most rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. A waiver is effective where the 'totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension.'" United States v. Goodman, 147 Fed. Appx. 96, 101 (11th Cir. 2005) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986)). "[T]he burden of showing admissibility rests . . . on the prosecution. The prosecution bears the burden of proving, at least by a preponderance of the evidence, the Miranda waiver and the voluntariness of the confession." Missouri v. Seibert, 542 U.S. 600, 608, 124 S. Ct. 2601, 2608 n.1, 159 L. Ed. 2d 643 (2004) (internal citations and punctuation omitted).

Based on the testimony given during the evidentiary hearing, it is clear that Defendant had been arrested when he made the statements in question. The uncontroverted evidence before the Court is that Defendant was "in custody" for Miranda purposes. However, it is equally clear that Defendant's statements were made subsequent to his having been advised of his Miranda rights and waiving the same. Trooper Threat testified that he personally observed his superior, Sergeant Phillips, read Defendant his Miranda rights, that Defendant appeared to understand the rights, and that he waived those rights and spoke to Sergeant Phillips and then to Special Agent Griffin. (Tr. at 14). Special Agent Griffin additionally testified that upon his arrival at the garage, he asked Defendant if he had been read his Miranda rights. Griffin testified that Defendant answered affirmatively, and agreed to speak to him. (Tr. at 42-

43). This testimony, establishing that Defendant was informed of and waived his Miranda rights prior to making the statements in question, has not been controverted by Defendant. Furthermore, there is no evidence that Defendant's waiver of his rights was anything but an "uncoerced choice."

Defendant alleges that his statements were not voluntary under Malloy v. Hogan, 378 U.S. 1, 7, 84 S. Ct. 1489, 1493, 12 L. Ed. 2d 653 (1964) (holding that confessions may not be obtained by any direct or implied promises) and Bram v. United States, 168 U.S. 532, 18 S. Ct. 183, 42 L. Ed. 568 (1897). The proper test for determining the voluntariness of statements, however, does not turn entirely on whether the police made any promises or threats, but rather whether, in light of the totality of the circumstances, the will of the defendant was overborne. See, e.g., Arizona v. Fulminante, 499 U.S. 279, 285, 111 S. Ct. 1246, 1251-1252, 113 L.Ed.2d 302 (1991). Thus, the mere implication of a benefit to a defendant does not render his statements *per se* involuntary. Taylor v. Singletary, 148 F.3d 1276 (11th Cir. 1998). Here, Agent Griffin indicated that during his questioning, he sought to determine the source of the cocaine and asked Defendant "do you want to help yourself?" (Tr. at 44). Defendant replied that "they will kill me," and then did not answer any other questions particular to the drugs after this point, and Agent Griffin terminated his interrogation. There is no evidence that any implication of benefit by Griffin coerced Defendant's statements in any way. Here, Defendant has not shown that, in light of all the surrounding circumstances, his will was overborne and that statements to Agent Griffin were actually involuntary.

AO 72A
(Rev. 8/82)

11

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motions to Suppress (Doc. No. 21; Doc. No. 22) be **DENIED**. The evidence obtained during the search of Defendant's vehicle and the statements made by Defendant should be admitted into evidence.

**SO REPORTED** and **RECOMMENDED**, this 26th day of June 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE